The complainant's right to an injunction being based on his alleged ownership of the timber, and the proofs authorizing the conclusion that he owned no more than an undivided half interest therein subject to two security deeds hereinafter referred to, and that none of the agreed purchase-price had been paid, and it being further shown that the timber, the cutting of which was sought to be enjoined, was being cut under an arrangement between the holder of the two security deeds and the two persons who owned the land and timber subject thereto, under which arrangement the proceeds of the timber were to be applied to the extinguishment of the two debts described in the said security deeds, and it not being shown that any of the defendants were insolvent, and no attack being made on the two security deeds, which the complainant had agreed to pay and discharge, but which he had not done, there was no error in refusing an interlocutory injunction.
(a) A different result is not required on account of the fact that on August 24, 1944 (the instant suit having been filed on May 1, 1944), the complainant filed an amendment reciting that he now comes and pays into the registry of the court a certain sum representing the *Page 863 
amount due on the debts named in the two above-referred-to security deeds, and tenders the same to the holder of said deeds, there being attached to said tender four alternate conditions.
Judgment affirmed. All the Justicesconcur.
 No. 15052. JANUARY 6, 1945. REHEARING DENIED FEBRUARY 9, 1945.
R. T. Shirling, alleging that he was the owner of all the saw timber and pulpwood on lot 208 in the 20th land district of Stewart County, Georgia, under a lease thereto for a term of two years, brought his petition against James Carlton Hester to enjoin him, his servants, agents, and employees, from cutting the timber on said land, and for damages from the cutting already done. He attached to his petition a copy of the timber lease signed by Will Williams, conveying the timber to John B. Richardson, and a copy of the transfer of said lease by Richardson to Shirling. The petition was answered by Hester, by Will Williams and his wife, Pearl Williams, and by Fort Brothers Inc., all of whom claimed an interest in the property.
At the interlocutory hearing it was shown that there were two security deeds executed by Will Williams prior to his lease to Richardson, both duly recorded before the making of said lease to Richardson, covering the described lot 208, one to the Federal Land Bank, and the other to Fort Brothers Inc., and that the lease to Richardson was made subject thereto; that Fort Brothers Inc. paid the debt owing by Williams to the Federal Land Bank and took from it a transfer of its security deed. It was also shown that the cutting sought to be enjoined was being done under an arrangement between Fort Brothers Inc. and Will and Pearl Williams, who claimed to own all the land in lot 208, above referred to.
John B. Richardson, who obtained his lease from Will Williams, testified: "The day this contract was signed, I may have told Will Williams not to tell Mr. Fort anything about it. I don't deny it or affirm it. Trading is a trading proposition; like Mr. Fort runs his business, I try to run mine. Mr. Shirling never paid me anything for this lease, and I never paid Buck [Will] Williams any money at all. I paid $50 to Mr. Wimberly [witness's attorney] the day he [Williams] signed this lease." Attorney Wimberly testified: "They [Richardson and Shirling] left $50 with me the day that paper was signed and told me to turn it over to Buck. They *Page 864 
said they were leaving it to show Buck they meant business, or in good faith. I never tendered it to Buck because his title was never cleared. They told me to give it to him when he got the title clear." Shirling testified: "I just stepped in Richardson's shoes. I assumed the debt he owes the negro; I did not pay a dime." Shirling is the father-in-law of Richardson. It was also shown at the hearing that Richardson and Shirling together negotiated with Will Williams and his wife Pearl for the purchase of the timber. While they both denied that Pearl represented to them that she owned an interest in the land or the timber, she was present participating in the discussion of the proposed sale to Richardson or Shirling. Shirling testified that, after the sale to Richardson, he was not in a hurry to cut the timber, but was giving Williams time to get his money out of his ground peas and find out how much he then owed Fort Brothers; and further testified that, when prodding Williams to find out how much he owed Fort Brothers, Williams said, "My wife don't want to sell that timber. . . My wife thought we were going to get enough for the timber to pay the whole debt." Shirling testified that all he was doing was in Richardson's name.
There was evidence to the effect that Pearl Williams owned an interest in the property; that she paid several hundred dollars on the purchase of it; that she told both Richardson and Shirling, at the time they were negotiating for a purchase of the timber, that she owned an interest in the property, and would not accept a certain offer therefor. It was shown that she and her husband jointly signed a promissory note to Fort Brothers Inc., covering the amount due them by reason of the loan made on the land in question, but which, it is true, was secured by a deed executed by her husband alone.
The trial judge refused the injunction prayed, and Shirling excepted.